## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHAEL MANNING,
as the Administrator of the
ESTATE of TERENCE CRUTCHER, SR.,

     *Plaintiff,*

  vs.

CITY OF TULSA, *et al.,*

     *Defendants.*

Case No. 17-cv-336-EFM-SH

## MEMORANDUM AND ORDER

Plaintiff Michael Manning, as the Administrator of the Estate of Terrence Crutcher, Sr., brings various claims against Defendant City of Tulsa and several of its police officers, based on the 2016 death of Mr. Crutcher. Before the Court is the Renewed Partial Motion to Dismiss filed by Defendant City. (Doc. 138). Plaintiff filed a Response, and the City has replied. Also before the Court are two Motions in Limine of Plaintiff (Docs. 140, 145), as well as several Motions to Dissolve the Stay of Discovery (Docs. 157, 160, 165, 168, 174) previously entered in the action. For the reasons provided in the present Order, the City's Motion to Dismiss is granted. The remaining motions are denied as moot or as premature.

### I.     Factual and Procedural Background

On September 16, 2016, the Tulsa Police received reports of an unattended SUV, left running in the middle of 36th Street North, just east of North Lewis Street. Tulsa Police Officer

Defendant Betty Jo Shelby, who was then on her way to an unrelated call, responded.  At the scene she encountered Mr. Crutcher, where a brief interaction occurred, the exact nature of which is the subject of substantial dispute.

Ultimately, Officer Shelby fired her handgun, striking Mr. Crutcher.  Approximately five seconds later, Defendant Officer Tyler Turnbough fired his taser, also hitting Mr. Crutcher, who then fell to the pavement.  Less than an hour later, Mr. Crutcher was pronounced dead at St. John Medical Center in Tulsa.

Austin Bond, then the Administrator of the Crutcher Estate, commenced this action in June of 2017, asserting various claims against a number of Defendants.  The matter has been subjected to extensive pleadings, with Defendants filing a series of Motions to Dismiss, most of which have been rendered moot by successive Amended Complaints filed by Plaintiff.

In granting Plaintiff's request for a Third Amended Complaint, the Magistrate Judge determined that discovery in the action should be stayed:

> In this case, Defendants Tyler Turnbough, Jason Roy, and Charles Jordan have filed Motions to Dismiss on the basis of qualified immunity. Similarly, Defendant Betty Jo Shelby has asserted qualified immunity as an affirmative defense in her Answer. Because some Defendants have asserted qualified immunity, the Court finds it appropriate to stay discovery pending the Court's decision on the issue of qualified immunity.
>
> Further, discovery cannot proceed against only Defendant City of Tulsa, which has not raised qualified immunity in its Motion to Dismiss, and Defendant Shelby, who has not filed a Motion to Dismiss, and be stayed only for those Defendants who have raised qualified immunity in their Motions to Dismiss. If discovery were to proceed in any form, Defendants for whom discovery had been stayed would still not be free of the burdens of discovery, as it would likely prove necessary for those Defendants to participate in the discovery process to ensure that the case does not develop in a misleading or slanted way that causes prejudice to their positions.

In subsequently granting Plaintiff's Motion for Leave to File a Fourth Amended Complaint, the Magistrate Judge directed that "[d]iscovery remains stayed."

Currently at issue before the Court is the Renewed Motion to Dismiss filed by the City, which was submitted in the wake of Plaintiff's Fourth Amended Complaint.  In presenting and responding to this Motion, the parties incorporated their prior briefing related to the Third Amended Complaint and presented additional argument related to the newly-added claim of negligent hiring, training and supervision.

For the purposes of this motion and as reflected in the most recent Amended Complaint, Plaintiff has advanced eight causes of action against Defendant City of Tulsa.  Seven of these causes of action allege the Defendant violated the constitutional rights of Mr. Crutcher in various respects.  Specifically, Plaintiff alleges the City (1) violated Mr. Crutcher's Fourth Amendment right be free from excessive force by failing to properly train Officer Shelby; (2) violated the same right by failing to properly train Officer Turnbough; (3) violated his Fourteenth Amendment right to equal protection by maintaining or tolerating a discriminatory policy, practice, custom, or culture; (4) violated his Fourteenth Amendment right by developing and maintaining policies, practices, customs, and a culture that interfered with Mr. Crutcher's right to a familial relationship; (5) promulgated an unwritten practice or "code of silence" custom that was deliberately indifferent to his constitutional rights, (6) promulgated a written policy that was deliberately indifferent to his constitutional rights, and (7) engaged in deliberately indifferent hiring and supervision of Officer Shelby.

In addition, Plaintiff advances a wrongful death claim against the City under Oklahoma law, grounding this claim on two separate theories of recovery.  First, he argues the City is liable under the doctrine of *respondeat superior* for Officer Shelby's negligent actions.  Second, he

argues the City is independently liable for its own negligence in hiring and failing to supervise Officer Shelby.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the City has moved to dismiss all claims, except the Plaintiff's claim of *respondeat superior* liability under Oklahoma law.

Beyond these claims against the City, the Fourth Amended Complaint also advances excessive force claims against Officers Shelby and Turnbough, and a claim of deprivation of the right to life against Officer Shelby.  In addition, the Fourth Amended Complaint brings two § 1983 claims against Tulsa Police Chief Charles Jordan.  However, Plaintiff dismissed Jordan from the action on March 24, 2021.[1]

## II.      Legal Standard

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[2]  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."[3]  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct,

---

[1] In addition, Plaintiff previously named Jason Roy, another police officer at the scene of the shooting, as a Defendant.  Plaintiff dismissed Roy from the action on January 22, 2019, immediately prior to the filing of the Third Amended Complaint.

[2] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[3] *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

much of it innocent, then the plaintiff [has] not nudged [his] claims across the line from conceivable to plausible."[4]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "[6]  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the...claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."[7]

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."[8]  As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[9]  "Where a

---

[4] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

[6] *Id.* (citation omitted).

[7] *Khalik*, 671 F.3d at 1192.

[8] *Id.* (citation omitted).

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' "[10]

### III.    Analysis

In *Monell v. Department of Social Services of City of New York*,[11] the United States Supreme Court held that a municipality can be liable under § 1983 for violations of civil rights if the violation is a result of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[12]  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[13]  A government, therefore, cannot be sued under § 1983 for injuries caused by its employees; rather, liability only attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury."[14]

---

[10] *Iqbal*, 556 U.S. at 678 (citation omitted).

[11] 436 U.S. 658, 690 (1978).

[12] *Id*. at 690.

[13] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

[14] *Monell*. 436 U.S. at 694; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (holding that *Monell* liability attaches only "for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'").

To establish liability under *Monell*, a plaintiff must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."[15]  In determining the existence of such policies, courts may look to:

> [1] a formal regulation or policy statement, [2] an informal "custom" so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law[,] [3] the decisions of employees with final policymaking authority[,] or [4] the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval.[16]

The municipality may be liable if it was deliberately indifferent to "an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff."[17]  Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[18]  Thus, in actions under § 1983, "a plaintiff [must] show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."[19]

---

[15] *Hollingsworth v. Hill*, 110 F.3d 733, 742 (1997) (further citations and quotations omitted); *see also Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) ("In order to establish municipal liability under *Monell*, a plaintiff must show (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").

[16] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quotations and citations omitted).

[17] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (further citations and quotations omitted).

[18] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

[19] *Schneider*, 717 F.3d at 769 (citations omitted).

- 7 -

A.      **Fourth Amendment Excessive Force based on the Training of Shelby**

Plaintiff's first claim against the City is for excessive force in violation of Mr. Crutcher's Fourth Amendment right based on Officer Shelby's conduct.  The City contends Plaintiff's claim focuses on a lack of training or supervision/discipline of police officers, and Plaintiff fails to provide factual allegations outlining what the deficiencies of the training were, what supervision or training was lacking, or how this alleged lack of training is linked to Officer Shelby's conduct with respect to Mr. Crutcher.  Based on these deficiencies, the City argues dismissal of the claim is appropriate.

Plaintiff has alleged the Tulsa Police Department ("TPD") had systematic deficiencies in its training and policies with respect to:  (1) tactical training and policies; (2) de-escalation training and policies; (3) handling of citizens with diminished capacity; and (4) investigation and resolution of legitimate excessive force and racial discrimination complaints.  Plaintiff also alleges the City's policy, customs and practices failed to "train officers on avoiding the reckless and deliberate creation of the need to use force."

However, Plaintiff provides no specific factual allegations to support these vague conclusions.  Nor does he articulate what the training policies and procedures were, or explain how they were deficient.  Thus, Plaintiff does not satisfy the first element of a *Monell* claim, and it is unnecessary to consider the second element, whether as casual link exists between the alleged deficiency and the alleged constitutional deprivation.

Plaintiff in the Fourth Amended Complaint has presented bare legal conclusions, and has failed to nudge his claim against the City across the line from conceivable to plausible. Dismissal of this claim is appropriate.[20]

## B.    Fourth Amendment Excessive Force based on the Training of Turnbough

Plaintiff's second cause of action asserts a Fourth Amendment violation premised on Officer Turnbough's conduct when he tased Mr. Crutcher.   The same policy and custom deficiencies outlined above apply to Plaintiff's second claim.   Further, the Fourth Amended Complaint does not allege a causal link between any policy or custom and Officer Turnbough's conduct.  Therefore, Plaintiff has failed to state a claim against the City for excessive force with respect to Officer Turnbough and the claim must be dismissed.

## C.    Fourth Amendment Equal Protection Claim

Plaintiff next asserts a claim against the City for violating Mr. Crutcher's equal protection rights.  Specifically, Plaintiff alleges:

> The City violated [Mr. Crutcher's] rights by failing its duty to properly train and supervise Officer Shelby and other TPD officers, and by maintaining or tolerating a policy, practice, custom, or culture that causes intentional disparate enforcement and outcomes in police encounters with African-Americans, who are similarly situated as non-African-Americans.   These failures by the City constitute a violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

Plaintiff also alleged the City "created, allowed, and/or knew TPD has a policy, practice, custom, and culture disparately and unconstitutionally stopping, citing, arresting, jailing, and using excessive force against African-Americans . . . ."   According to Plaintiff, the City was also

---

[20] *See, e.g., Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

allegedly informed of a need to implement implicit bias training and did not implement implicit bias training. And, he alleges, "the City's African-American population was arrested twice as much as other races . . . ."

As outlined above, in order to establish municipal liability under *Monell*, a plaintiff must show (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.[21] Here, Plaintiff does not identify a written policy. Therefore, the Court understands his cause of action to be premised on an "informal custom."[22] Plaintiff alleges the City has an informal custom resulting in unconstitutional stopping, citing, arresting, jailing and using excessive force against African-Americans. However, Plaintiff provides no explanation to the City or this Court what the custom is. Nor does Plaintiff allege any link between the custom and the constitutional violations.

To the extent Plaintiff's claim is one for selective enforcement, claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause.[23] "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[24] To state

---

[21] *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004); *Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010); *see also Monell*, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

[22] *Brammer-Hoelter*, 602 F.3d at 1189.

[23] *Marshall v. Columbia Lea Regional Hosp*., 345 F.3d 1157, 1166 (10th Cir. 2003).

[24] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997).

a claim for selective law enforcement against the City, Plaintiff must sufficiently allege Officer Shelby committed a constitutional violation as a result of racial animus.[25]

However, Plaintiff has not presented any factual allegations that Officer Shelby's conduct was motived by a racial animus.  Plaintiff alleges Officer Shelby's use of force was the result of her "own deliberate conduct."  This allegation does not establish or allege Officer Shelby acted with a racial animus.  The only factual allegation concerning race at the time of the incident occurred *after* Officer Shelby discharged her weapon.  Plaintiff alleges:

> Upon arrival to the scene of the shooting . . . Corporal Poth immediately instructed Officer Shelby to "use her rights" and "not to say a word" until she had an attorney because he "knew there was going to be a group of people that didn't like what happened simply because of the color of somebody's skin."

This allegation does not demonstrate that a discriminatory purpose motivated the decisions of *Officer Shelby* at the time of the shooting.[26]

Further, "[s]tatistical evidence alone is rarely enough to show discriminatory purpose."[27] Claims based on statistical comparisons "require[] a reliable measure of the demographics of the relevant population, a means of telling whether the data represent similarly situated individuals, and a point of comparison to the actual incidence of crime among different racial or ethnic segments of the population."[28]  The conclusory allegation advanced by Plaintiff is insufficient to

---

[25] *See Diallo v. Milligan,* 2019 WL 3302166, at *10 (D. Colo. 2019).

[26] *Marshall*, 345 F.3d at 1168.

[27] *United States v. Rodella*, 59 F. Supp. 3d 1331, 1353 (D.N.M. 2014).

[28] *Marshall*, 345 F.3d at 1168 (citations omitted).

state a claim.  Plaintiff's Fourteenth Amendment claim premised on selective enforcement must be dismissed.

## D.    Fourteenth Amendment Due Process Right

Next, Plaintiff alleges a claim against the City for violating Mr. Crutcher's Fourteenth Amendment right of familial association.  Defendants argue the claim should be dismissed because it is an unnecessary corollary of Plaintiff's Fourth Amendment claim, and Plaintiff has failed to state a claim for a violation of Mr. Crutcher's Fourteenth Amendment right.

Mr. Crutcher undeniably had a substantial interest in the right to associate with his family.[29]  However, to state a Fourteenth Amendment claim premised on the right of familial association, this circuit requires a plaintiff demonstrate that intent on the part of the defendant to disrupt this association.[30]

Here, Plaintiff does not allege Officer Shelby directed her conduct at Mr. Crutcher's familial association, or that she intended to interfere with Mr. Crutcher's familial association.  "A municipality cannot be held liable under section 1983 for acts of an employee if [it is not possible

---

[29] *J.B. v. Washington Cnty.*, 127 F.3d 919, 927 (10th Cir. 1997).

[30] *See Estate v. Herring ex rel. Fort v. City of Colo. Springs*, 233 F. App'x 854, 856 (10th Cir. 2007) ("Plaintiffs have not alleged, nor do they attempt to demonstrate, that the officers directed their conduct at Plaintiffs' familial association with their father or intended to interfere with it.  Because they have not made the requisite showing, the district court correctly granted summary judgment for defendants."); *see also Trujillo v. Board of County Com'rs of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[A]n allegation of intent to interfere with a particular relationship protected by the freedom on intimate association is required to state a claim under section 1983.").

to] find [] that the municipal employee committed [a] constitutional violation."[31]   As such, this claim must be dismissed.[32]

### E.   Deliberate Indifferent  Practices and Training

Next, Plaintiff asserts a fifth claim against the City for "deliberately indifferent practices, customs, training, supervision and ratification."  To support this claim, Plaintiff alleges TPD had a "code of silence" and/or "blue wall" that "caused TPD to a) insufficiently investigate allegations of police misconduct; b) fail to promptly interview suspected TPD officers or take witness statements and preserve evidence regarding misconduct; and c) fail to properly and sufficiently discipline TPD officers."  Plaintiff also alleges Officer Shelby refused to provide needed medical care.

As is reflected in the pleadings, Plaintiff abandoned his failure to provide medical care claim.  With respect to the alleged "code of silence," Plaintiff does not provide any factual averments to support his conclusion that this policy or custom exists.  Plaintiff does not explain what the "code of silence," is or how it violates a constitutional right.  Additionally, the claim focuses on conduct that happened after Officer Shelby discharged her weapon.  To the extent these factual allegations fall under the "code of silence," Plaintiff does not allege a causal link between this policy or custom and a violation of Mr. Crutcher's constitutional rights.  Instead, the

---

[31]*Hill v. Martinez*, 87 F.Supp.2d 1115, 1120 (D. Colo. 2000) (quoting *Myers v. Okla. County Bd of Cnty. Com'rs*, 151 F.3d 1313, 1316 (10th Cir. 1988)).

[32] *See Herring*, 233 F. App'x at 856 (affirming summary judgment in defendants favor where "[p]laintiffs have not alleged, nor do they attempt to demonstrate, that the officers directed their conduct at plaintiff's familial association with their father or intended to interfere with it.").

allegations are that TPD's own procedures were violated to cover up prior constitutional violations. This is insufficient to support a *Monell* claim against the City.  For these reasons, this claim must be dismissed.

**F.    Deliberate Indifference Regarding the Use of Deadly Force**

Plaintiff asserts a *Monell* claim against the City, alleging that its written deadly force policy is unconstitutional.  The City argues in its Motion to Dismiss that, as with most of his other constitutional claims, Plaintiff has failed completely to offer anything more than pure conclusions and bare labels.  The Fourth Amended Complaint identifies the City's excessive force policy as stating that Tulsa's written policy on the use of force provides:  'Deadly force may be used if the officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm."  Plaintiff further asserts, again as a bare conclusion, that the policy is unconstitutional on its face.

More importantly, Plaintiff has failed to offer any specific allegations as to how the Tulsa use-of-force policy has any direct causal link to the constitutional deprivation in this case.  Plaintiff also has failed to show that the City was deliberately indifferent.  Did policy makers at the City of Tulsa have grounds for knowing that the use-of-force policy was so deficient as to render constitutional violations probable?  The Fourth Amended Complaint provides absolutely no guidance on the subject.

Plaintiff does not explain how any policy inadequacy led to Officer Shelby's use of force against Mr. Crutcher. Nor does he allege any facts showing how inadequate and constitutionally policies of the City created a known likelihood of constitutional violations.  Given the purely conclusory nature of the Fourth Amended Complaint with respect to the City's liability for Officer Shelby's actions, dismissal of the claim is appropriate.

G.    **Deliberate Indifference Regarding Hiring under § 1983**

Plaintiff alleges the City is liable because TPD failed to adequately screen and scrutinize Officer Shelby before hiring her.  To establish a claim against the City, Plaintiff must allege "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."[33]

Plaintiff's Fourth Amended Complaint does not identify any specific hiring or screening policy or custom.  Instead, Plaintiff only alleges TPD failed to adequately screen Officer Shelby.  Even assuming TPD failed to adequately screen Officer Shelby and such failure resulted in a constitutional violation, "a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability."[34]  Dismissal of this claim is warranted.

H.    **Negligent Hiring, Training and Supervising**

Plaintiff next asserts a negligent hiring, training and supervising claim against the City. The City contends it is immune from this negligent hiring, training and supervising claim pursuant to the Oklahoma Governmental Tort Claims Act ("OCTCA").[35]

The OGTCA 'is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort.'[36]  The OGTCA adopts the doctrine of sovereign immunity and sets out the specific circumstances under which the state waives its immunity and that of its political

---

[33] *Hollingsworth* 110 F.3d at 742.

[34] *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).

[35] *See* Okla. Stat. tit. 51, § 155(1) *et seq.*.

[36] *Tuffy's Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009).

- 15 -

subdivisions.[37]  The OGTCA states that the state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment in situations where a private person or entity would be liable for money damages under Oklahoma law.[38]  However, the OGTCA sets out a list of specific acts for which sovereign immunity is not waived, including the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees."[39]

The Oklahoma Supreme Court has explained that § 155(5) should be narrowly interpreted because "[a]lmost all acts of government employees involve some element of choice and judgment."[40]  "Therefore, 'the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions.' "[41]

Plaintiff argues the exemption only applies to hiring and training policies as to "managerial" or upper level employees, not "a street level patrol officer."  The City disagrees with Plaintiff's characterization.  The Oklahoma Supreme Court has not directly "addressed the question of whether a political entity's failure to hire, train, supervise, monitor and/or retain its employees falls under the § 155(5) discretionary function exception."[42]

---

[37] Okla. Stat. tit. 51, § 152.1; *see also Smith v. City of Stillwater*, 328 P.3d 1192, 1198 (Okla. 2014).

[38] Okla. Stat. tit. 51, § 153; *see also Anderson v. Eichner*, 890 P.2d 1329, 1336 (Okla. 1994).

[39] Okla. Stat. tit. 51, § 155(5).

[40] *State ex rel. Okla. Dep't of Pub. Safety v. Gurich*, 238 P.3d 1, 3 (Okla. 2010) (quoting *Nguyen v. State*, 788 P.2d 962, 964 (Okla. 1990)).

[41] *Smith*, 328 P.3d at 1198 (quoting *Gurich*, 238 P.3d at 3).

[42] *See Lankamp v. Mayes Emergency Services Trust Authority*, 2017 WL 875483, at *4 (N.D. Okla. 2017).

Plaintiff cites a number of cases to support his position.  However, these cases do not establish the managerial/upper level employee distinction is determinative.  In *Houston v. Indep. Sch. Dist. No. 89 of Okla. Cnty.*,[43] the court concluded decisions regarding supervision and retention of an executive director did implicate policy concerns.[44]  However, the court did not address "low level employees" or suggest that decisions concerning low level employees do not implicate policy concerns.  The court merely addressed the facts of the case before it.

In *Langkamp v. Mayes Emerg. Servs. Trust Auth.*,[45] the plaintiffs alleged the defendant "failed to sufficiently and properly hire, train, supervise, monitor and retain its employees."[46]  The plaintiffs were themselves a former secretary and executive director.[47]  However, the decision does not reveal the positions held by the "employees" who were improperly hired, trained, supervised, monitored or retained.  Therefore, *Langkamp* does not support the conclusion that the Section 155(5) exemption only applies to upper level employees.

Finally, in *Johnson v. Ind. Sch. Dist. No. 89 of Okla. Cnty*,[48] the plaintiff alleged the defendant negligently supervised a director of special services.[49]  In reaching its conclusion that plaintiff's claim was barred by section 155(5), the *Johnson* Court did not analyze the employee's

---

[43] 949 F. Supp. 2d 1104 (W.D. Okla. 2013).

[44] *Id*. at 1109.

[45] 2017 WL 875483 (N.D. Okla. 2017).

[46] *Id*. at *4 (quotation omitted).

[47] *Id*. at *1.

[48] 2016 WL 1270266 (W.D. Okla. 2016).

[49] *Id*. at *1.

- 17 -

position at issue.[50]  Instead, the Court noted, "courts in this district (including this Court) have applied the discretionary function exemption to similar allegations of negligent hiring, supervision and retention."[51]

In contrast, the clear weight of Oklahoma authority supports the finding that the hiring, training, supervising, monitoring and retention of employees are actions which implicate a political entity's policy and planning functions, and therefore fall under the discretionary function exemption of Section 155(5).[52]  Notably, many of these decisions apply the exemption to "low level employees" such as teachers and police officers.  Therefore, the Court concludes Plaintiff's negligent hiring, training and supervision claim is barred by the discretionary function exemption found in Okla. Stat. tit. 51, § 155(5).

## I.       Equitable Claims

Finally, Plaintiff does not state a separate claim for injunctive relief but requests injunctive relief in his prayer for relief.  Plaintiff seeks injunctive relief "to prevent such deprivations of constitutional rights in the future, and/or ensure that allegations of deprivations of constitutional rights are properly investigated . . . ."

---

[50] *Id.* at *7-8.

[51] *Id.* at *8.

[52] *See id.* (negligent supervision); *Burris v. Okla. ex rel. Okla. Dep't of Corrections*, 2014 WL 442154, at *9 (W.D. Okla. 2014) (negligent hiring, training, supervision, and retention of a correctional center's case manager); *Seals v. Jones*, 2013 WL 5408004, at *4 (N.D. Okla. 2013) (negligent hiring and retention of a deputy); *Houston*, 949 F. Supp. 2d at 1109 (negligent supervision and retention of an executive director); *Fumi v. Bd. of Cnty. Comm'rs of Rogers Cnty.*, 2011 WL 4608296, at *6 (N.D. Okla. 2011) (negligent training and supervision of investigating sergeant); *Burns v. Holcombe*, 2010 WL 2756954, at *15 (E.D. Okla. 2010) (negligent hiring, training, and supervision of police officers); *Jackson v. Okla. City Pub. Schs.*, 333 P.3d 975, 979 (Okla. Civ. App. 2014) (negligent hiring, training, and supervision of teacher).

Plaintiff "must demonstrate standing separately for each form of relief sought."[53]  As explained by the Supreme Court in *City of Los Angeles v. Lyons*,[54] a plaintiff seeking such relief must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."[55]  That is, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . .  if unaccompanied by any continuing, present adverse effects."[56]

The City argues Plaintiff does not have standing to seek prospective injunctive relief.  In response, Plaintiff complains that "under the state of current Constitutional law, [there will never be anyone] who has standing to obtain declaratory injunctive relief."  Dkt. No. 117 at 17.  Therefore, he asks that "the Court consider these public policy issues, review the language of Article III and find that the Court does have jurisdiction to consider the granting of equitable relief."

Despite Plaintiff's position, this Court is bound to follow the applicable precedent of the Supreme Court.[57]  The situation before the Court cannot be differentiated from *Lyons,* or from *Brown v. City of Ferguson, Missouri*,[58]  where the court dismissed the plaintiff's similar request

---

[53] *Friends of Earth Inc. v. Laidlaw Envtl. Serv. (TOC) Inc*., 528 U.S. 167, 185 (2000).

[54] 461 U.S. 95 (1983).

[55] *Id.* at 101-02 (1983) (internal citations and quotations omitted).

[56] *Id*. at 101 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) (brackets omitted).

[57] *United States v. Martinez*, 565 F. Supp. 2d 1270, 1274 (D.N.M. 2008).

[58] 2015 WL 8313796 (E.D. Mo. 2015).

for injunctive relief to prevent discriminatory policy, finding that Article III standing cannot be established on "a mere possibility [the plaintiffs] will again encounter police and face discrimination."[59]

Here, Plaintiff seeks relief to protect "all Tulsans," but he has failed to show an immediate danger of sustaining a direct injury,[60] and has not alleged real and immediate imminent harm is likely to result from the City's policing policies.  Further, Plaintiff's request for injunctive relief seeks an injunction forcing the City government to comply with the law.  Courts have "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."[61]  Additionally, the Court does not find that Plaintiff has made the requisite showing to justify third-party standing.[62]

Finally, Plaintiff's requested relief implicates federalism concerns.  Supreme Court precedent "advise[s] caution on behalf of federal courts when seeking to impose injunctive relief upon state governmental authorities, particularly in the case where there remain alternative remedies at law."[63]  This Court will not interfere with the state government's administration of its own laws.  For these reasons, Plaintiff's prayer for injunctive relief is dismissed for lack of Article III standing.

---

[59] *Id*. at *7.

[60] *Lyons*, 461 U.S. at 101-02.

[61] *Allen v. Wright*, 468 U.S. 737, 754 (1984), abrogated on other grounds by *Lexmark Intern. Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014).

[62] *See Aid for Women v. Foulston*, 441 F.3d 1101, 1111-12 (10th Cir. 2006) (to establish third party standing plaintiff must show a close relation to the third party and a hindrance or inability of the third party to pursue his own claims).

[63] *Brown*, 2015 WL 8313796 at *7.

**J.      The First Amended Complaint**

In his Response, Plaintiff cites to his First Amended Complaint to support his claims and in opposition to the City's Motion.   Plaintiff argues the City should be somehow judicially estopped from arguing the Fourth Amended Complaint is factually deficient due to the City's prior arguments with respect to prior complaints.  The Court declines to consider Plaintiff's allegations in his prior complaints.

"An amended complaint supersedes the original complaint and renders the original complaint of no legal effect."[64]    Upon the proper filing of an amended complaint, the district court limits its examination to those claims included in the most recently amended complaint.[65] "However, pursuant to Rule 10(c), specific allegations of the prior complaint may be referenced or incorporated by the amended complaint, but only if reference to allegations in the prior complaint is direct and specific."[66]  It is not enough that the amended complaint "mentions the existence of a prior original complaint and refers generally to the 'informal relief' sought in that complaint, [if] the amended complaint makes no explicit and direct reference to specific allegations of the original complaint."[67]

The Fourth Amended Complaint makes no explicit or direct reference to the First Amended Complaint.  Further, the Second Amended Complaint superseded the First Amended Complaint;

---

[64] *Franklin v. Kansas Dept. of Corrections*, 160 F. App'x 730, 733-34 (10th Cir. 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991); *see Davis v. TXO Production Corp.*, 929 F.2d 1515, 1517 (10th Cir.1991) ("[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect") (internal quotations marks and citations omitted)).

[65] *Franklin*, 160 F. App'x at 733-734.

[66] *Fullerton v. Maynard*, 943 F.2d 57, 1991 WL 166400, *2 (10th Cir.1991) (Table) (citations omitted).

[67] *Id.*

the Third Amended Complaint superseded the Second Amended Complaint; and the Fourth Amended Complaint superseded the Third Amended Complaint.   The Court therefore limits its examination to the Fourth Amended Complaint.

Additionally, the Court notes that each amendment was the result of Plaintiff's own action, and not in response to any order of this Court ruling on the City's previous motions to dismiss or motion to strike.   The City responded to each version of the complaint pending before the Court. The City was not in control of Plaintiff's strategy, or the allegations Plaintiff chose to include or not include in his various complaints.   Therefore, the Court declines to judicially estop the City from raising the arguments raised herein.

## K.      No Further Amendment

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[68]   The Court notes that the instant complaint is Plaintiff's *fifth*.

Plaintiff has had ample opportunity to state his claims for relief.   Additionally, this case has been pending since June 15, 2017, and Defendants are entitled to a resolution of the claims against them.   For these reasons, the Court will not grant Plaintiff leave to file yet another Amended Complaint.

## L.      Additional motions

---

[68] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

Plaintiff has file two Motions in Limine.  (Docs. 140, 145).  The first Motions seeks to exclude as irrelevant any evidence regarding the presence of phencyclidine (PCP) in Mr. Crutcher's blood or in his vehicle, or evidence of his criminal record.  The second Motion seeks to exclude any testimony from Defendant Officer Shelby as to what she believed Mr. Crutcher was doing immediately before the shooting.  This motion cites various passages of Officer Shelby's testimony at her criminal trial as to the inferences she made at the scene about Mr. Crutcher's intentions.  Plaintiff argues that such testimony represents improper lay witness opinions.

Plaintiff filed both motions while the case was stayed pending resolution of various motions to dismiss.  This stay applied to all discovery by the parties.  Courts in this District and elsewhere in the Tenth Circuit generally find motions in limine filed before the close of discovery to be premature.[69]  Further, the chambers rules in effect at the time the Motions were filed limit any single party to one omnibus motion in limine.[70]

Under the scheduling order entered in this case, such omnibus motions are to be brought within 21 days *after* the close of discovery, and must be preceded by an attorney meeting to confer and resolve anticipated evidentiary issues.  Therefore, Plaintiff's Motions in Limine will be denied

---

[69] *See, e.g., Dwerlkotte v. Mitchell*, 2021 WL 5890953, at *1 (D. Kan. 2021) ("Because this case is in its initial stages and discovery has not been initiated, the request is premature."); *Shaw v. T-Mobile*, 2020 WL 4334993, at *3 (D. Kan. 2020) ("The court concludes it must deny plaintiff's motion as premature . . . where plaintiff filed her motion before discovery . . . ."); *Baker v. U.S. Dep't of Agriculture*, 2007 WL 2344757, at *2 (N.D. Okla. 2007) (plaintiff's motion to approve admissibility of evidence prior to entry of scheduling order set "is procedurally improper and at best premature."); *Scottsdale Ins. Co. v. Tolliver*, 2006 WL 2193434, at *1 (N.D. Okla. 2006) (denying motion in limine direct at arson report, as there was "no reason to exclude the report until the completion of discovery."); *Krepack v. Freidstein*, 2009 WL 5908009, at *1 (D. Colo. 2009) (summarily denying motion in limine after noting, "[t]he Court has reviewed this motion and the case file and finds no indication that the parties have conducted any discovery relating to the issues raised in the motion.").

[70] *See* https://www.oknd.uscourts.gov/jfh-chambers-rules.

without prejudice, subject to refiling after the close of discovery as part of an omnibus motion in limine contemplated by chambers rules.

Finally, Plaintiff has submitted a series of motions seeking a lifting of the stay a resumption of discovery.  The stay of discovery put in placing pending resolution of the City's Motion to Dismiss, and those motions are therefore moot.

The Court will address discovery and other issues at the conference it has scheduled for February 14, 2023.

**IT IS THEREFORE ORDERED** that Defendant City of Tulsa's Motion to Dismiss in Part (Doc. 138, incorporating Doc. 115) is hereby **GRANTED**.  Plaintiff's Motions in Limine (Docs. 140, 145) are **DENIED WITHOUT PREJUDICE**.  Plaintiff's Motions for Relief from Stay (Docs. 157, 160, 165, 168, 174) are **DENIED AS MOOT.**

**IT IS SO ORDERED**.

Dated this 9th day of February, 2023.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

- 24 -