IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) MICHAEL MANNING, AS THE )
ADMINISTRATOR OF THE ESTATE )
OF TERENCE CRUTCHER, SR., )
 )
Plaintiff, )
 )
v. ) Case No.: 17-CV- 336-EFM-SH
(1) BETTY JO SHELBY, )
   individually, *et al* )
 )
Defendants. )

## DEFENDANT BETTY JO SHELBY'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Betty Jo Shelby ("Defendant"), and hereby submits her Reply in support of her Motion for Summary Judgment. In support thereof Defendant would show the Court as follows:

## REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT MATERIAL FACTS AND SUPPLEMENTAL FACTS

**4.** Disputed. Defendant has never suggested the Dinkheller incident and this case were the same. However, the teaching point of the training video is not letting someone you are trying to take into custody return to or reach into a vehicle.

**6.** Disputed. Defendant's experience as an officer and her status as a training officer assisted her in reaching the decisions she made during her encounter with Mr. Crutcher.

**17.** Disputed. There is no evidence in the record that there was blood on the driver's door window. The only thing offered by Plaintiff is one extracted frame from the helicopter video taken at dusk when the incident occurred. Subsequent examination of Mr. Crutcher's vehicle at the scene and later never revealed blood on any part of the window. (See Exhs. 3 and 10 of Dkt. 211, City Reply). In his report, crime scene Detective Marcus Harper reported that at the scene all of the

1

windows were partially rolled down (Bates stamped p. 84 of Exh. 10, Dkt. 211) Two days following the shooting when he participated in the photographing and measuring of the Crutcher driver's door window, he observed the window in the similar position it was in at the scene. (Exh. 10, Dkt. 211, photos in the declaration of Marcus Harper). An enlarged view from the helicopter video shows Mr. Crutcher's arm inside the driver's door window. (Exh. 1, Declaration of Video Expert Parris Ward with enlarged extracted frame from the helicopter video, which shows Mr. Crutcher's arm in the driver's window). Finally, a review of the video of the helicopter shows Mr. Crutcher's white shirt clearly visible as the camera looks through the open sunroof and then through the partially open driver's window. (Plaintiff's Exh. 2 to the response brief, Dkt. 211 at 19:44:53 on the video). There is nothing in the record to support Plaintiff's claim of blood on the window. There are no allegations of spoliation or accusations of evidence manipulation. Defendant adopts the facts and arguments of the City in their reply brief (Dkt. 211) confirming that the driver's window was partially rolled down.

**21 and 22.** Does not controvert Defendant's original facts.

**23-25.** See Defendant's response to paragraph 17.

**32.** Mr. Crutcher was not instructed to put his hands in the air, did not follow the command to get on his knees, and was never instructed to walk away. Defendant admits Mr. Crutcher's hands were not in his pockets when he walked toward the SUV.

**34 and 38.** Does not controvert Defendants' original fact.

**43.** See response to plaintiff's number 17.

**44.** Does not controvert Defendants' original fact.

**45.** No expert report submitted by Defendant makes any blanket opinion that Defendant's conduct was "objectively reasonable."

**49.** Does not controvert Defendants' original fact.

**50.** Does not controvert Defendants' original fact. There is no evidence in the record that the driver's window had blood on it. It is a conclusory allegation. Also, see response to 17, supra.

**51 and 52.** Does not controvert Defendants' original fact.

**56.** Does not controvert Defendants' original fact. Roy and Dunn were in different locations from Shelby and Turnbough. (See Exh. 6 to City's Reply, Dkt. 211). Since it occurred after the shooting it is immaterial as to the cause of the shooting.

**62.** Does not controvert Defendants' original fact. Dr. Wein's sworn cited testimony is factual in nature and not an expert opinion.

**63-66.** Does not controvert Defendants' original facts.

### PLAINTIFF'S ADDITIONAL MATERIAL FACTS

Defendant admits the following facts set forth by Plaintiff: 1, 2, 3, 4, 5, 6, 7, 10, 11, 13, 15, 16, 25, 26, 27, 32. These facts offered by Plaintiff are not material: 12, 14, 22, 23, 24, 28, 29, and 30.

**8.** Defendant disputes the fact as stated. In looking at the interview in context, Defendant was talking about Mr. Crutcher's behavior back by her police car, and not at the time of the shooting. (Plaintiff's Exh. 9 starting at 5:08).

**9.** Disputed. Defendant also testified about being "targeted" by Mr. Crutcher just before he reached into the driver's window. (Exh. 1, Exh. 6 at 2:48, and Exh. 9, Dkt. 193).

**17 and 18.** Disputed. Plaintiff bears the burden of proof, and the record is devoid of any facts to support a finding that Mr. Crutcher's wound was squirting or produced blood spatter. Mr. Crutcher was wearing a shirt when he was shot which would have prevented blood from traveling away from his body and landing anywhere. Neither Defendant or Officer Turnbough, or any of the several investigators ever observed any spatter of blood that went outside of Mr. Crutcher's clothing when Mr. Crutcher was shot. (See City Exh. 7 – Declaration of Officer Turnbough at ¶¶ 31 – 35). Only after

3

several seconds did Officer Turnbough first see blood on Mr. Crutcher's shirt and realize that Mr. Crutcher had been shot. Crime scene investigator Marcus Haper documented the blood pattern evidence he observed at the scene in his report (City Reply Exh. 10, bates stamped p. 84, Dkt 211) and noted it was only found on the door of the car, pooled on the running board and ground and on Mr. Crutcher's clothes. Also, the photographs of the scene indisputably show that the window was rolled halfway down. See also City Reply Exhibit 9 – photographs of Detective Harper's measurement of the window. See Plaintiff's own Exhibit 13, p. 8: Officer Turnbough states the driver's side window was "definitely down. … I observed him reach into the vehicle. … ." Significantly, Plaintiff's own exhibit shows that the driver's side window was rolled halfway down. See Plaintiff's Exhibit 11, photograph at page 2 of that exhibit (Dkt.202). See also City Reply Exhibit 5 – using that same photograph to show the position of the driver's side window. See Exh. 1, declaration of Parris Ward with enlarged from from helicopter video.

**19.** Disputed. See response to 17 and 18.

**20.** Disputed. Reading further in the cited deposition testimony, Defendant explained that her decision was based on her experience and training and the totality of the circumstances she faced that day. (Exh. 2, Deposition of Betty Shelby, p. 62, l. 10-24, and p. 143, l.11-20).

**21.** Disputed. Defendant's answer at trial was "At that point he gave me every indication that he had a gun." (Plaintiff's Exh. 7, Dkt. 202, p. 979, l. 19-22)

**34.** Defendant objects as it is a conclusory allegation.

## ARGUMENTS AND AUTHORITIES

Plaintiff has failed to provide the court with any credible evidence that would demonstrate a genuine issue of material fact exists precluding summary judgment in this case.[1] Defendant has

---

[1] As Rule 52(c)2 makes clear, when a motion for summary judgment is properly made and supported, the opposing party must respond with more than allegations or denials. There must be some evidentiary basis to support his position. Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter;

provided affidavits and documentary support demonstrating the basis for her entitlement to summary judgment in this case. Plaintiff has not provided any testimonial or physical evidence to support his contention that an underlying constitutional violation was caused by Defendant. Plaintiff's version of the facts is conclusory and self-serving and contains numerous factual inaccuracies and inconsistencies that are unequivocally refuted by Defendant, investigators, as well as the photographs and videotape of the incident. Unsupported and conclusory allegations do not create a genuine issue of fact simply because it possibly opposes evidence presented by the Defendant in her motion for summary judgment.[2] Defendant adopts the arguments and authorities set forth by the City of Tulsa in their reply brief. (Dkt. 211)

**A.   Excessive Force**

First, Plaintiff fails to prove that *Graham*'s first prong weighs in Plaintiff's favor. Plaintiff merely states that there was no probable cause to arrest Mr. Crutcher for a felony. Plaintiff fails to address this Court's recent holding in *Andersen v. DelCore* that there is more than just determining ". . . whether the crime was a misdemeanor or a felony."[3] The *Andersen* Court held ". . . we may properly consider whether exigent circumstances supported the need for prompt action by law enforcement"[4] The officer's own experience and specialized training along with the totality of the circumstances, not just the isolated instances, determine whether exigent circumstances exist.[5] While Defendant's initial encounter with Mr. Crutcher appears innocuous, the events that

---

rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.
[2] *Williams v. Valencia County Sheriff's Office*, 33 Fed. Appx. 922, 932 (10th Cir. 2002).
[3] *Andersen v. DelCore*, 79 F.4th 1153 (10th Cir. 2023), 2023 WL 5313974; *St. George v. City of Lakewood, Colorado*, 2021 WL 3700918 (10th Cir. 2021).
[4] *Id.* citing *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (first *Graham* factor weighed against officers' use of force when crimes at issue were minor, officers lacked evidence or probable cause to make an arrest, and officers did not believe exigent circumstances existed), (emphasis added) cert. denied, ––– U.S. –––, 138 S. Ct. 2650, 201 L.Ed.2d 1063 (2018).
[5] *Id.*

5

transpired in those approximate three minutes along with Defendant's own experiences and specialized training created exigent circumstances that supported the need for prompt action from law enforcement. Plaintiff's attempt to discredit the evidence that Defendant believed Mr. Crutcher was under the influence of PCP fails. Plaintiff merely states that other officers Roy and Dunn got closer to Mr. Crutcher and did not notice any perspiration or chemical odor. Roy and Dunn did not approach Mr. Crutcher until after he was mortally wounded and more importantly, Defendant was a trained drug recognition expert (DRE) - Roy and Dunn, were not. In fact, their lack of DRE training is demonstrated by the fact that Mr. Crutcher's autopsy revealed he was indeed under the influence of PCP. The credible evidence supports Defendant's assessment of Mr. Crutcher being under the influence of PCP. Next, Plaintiff does not dispute per se that Mr. Crutcher was continually reaching for his pockets, but instead argues that "based on Defendant's training, when people put their hands in their pockets it could be for many reasons." The credible evidence is that because Defendant believed Mr. Crutcher was on PCP and those on PCP can be unpredictable and dangerous and given that Mr. Crutcher would not obey her commands, based on her experience and training, when Mr. Crutcher continually reached into his pocket, she believed he was searching for a gun. These exigent circumstances tilt *Graham's* first prong in favor of Defendant.

    The assessment of *Graham's* second prong involves the application of *Larsen* and Plaintiff fails to prove that the *Larsen* factors weigh in his favor. Plaintiff has not only failed to articulate a response to Defendant's application of *Estate of Smart*[6] that a warning is only required where feasible or practical. Plaintiff merely states that Defendant "never ordered Terence to drop his weapon because she never saw one, and Terence never had an opportunity to comply because he did not have one." [Plaintiff's Response at 18]. Plaintiff's argument is fatally flawed and not

---

[6] *Estate of Smart by Smart v. City of Wichita,* 951 F.3d 1161 (10th Cir. 2020)

supported by case law. Plaintiff has failed to provide any authority that requires an officer to actually see a weapon or actually provide a warning – regardless of the circumstances. That is because based on Tenth Circuit law an officer does not need to actually see the suspect's weapon and a warning to drop the weapon is required "where feasible."[7] Therefore, Plaintiff has failed to refute that the first *Larsen* factor is in favor of Defendant.

Plaintiff failed to articulate a response to Defendant's arguments in regard to *Larsen's* second factor, instead Plaintiff merely states that "Terence did not make any hostile movements with a weapon toward the officers." [Plaintiff's Response at 18]. Mr. Crutcher made a hostile movement when he reached into the SUV to, as Defendant reasonably believed, pull out a gun and shoot her. Plaintiff provides no authority that would contradict Defendant's argument and the totality of the circumstances support Defendant's position and therefore the second factor of *Larsen* weighs in favor of Defendant.

As to *Larsen's* third factor, Plaintiff makes a blanket statement that the distance between Defendant and Mr. Crutcher was created by Defendant's reckless conduct and cites *Sevier*.[8] Plaintiff fails to articulate how Defendant's conduct was reckless. Defendant's conduct in question does not meet the standard required to warrant reckless conduct. The Supreme Court held in *Mendez*[9] the Fourth Amendment provides no basis for a provocation rule – that is, making an officer's otherwise reasonable use of force unreasonable by reference to a claim that the officer intentionally or recklessly provoked a violent confrontation. The *Mendez* Court held that reasoning is incompatible with the court's excessive force jurisprudence, which sets forth a settled and exclusive framework for analyzing whether the force used in making a seizure complies with the

---

[7] *Id.; Samuel v. City of Broken Arrow, Thomson v. Salt Lake Cnty., and Estate of Valverde.*
[8] *Sevier v. City of Lawrence,* 802 F.3d 695 (10th Cir. 1995).
[9] *City and County of Los Angeles, California v. Mendez,* 137 S.Ct. 1539 (2019).

Fourth Amendment.[10] Specifically, in *Mendez*, the Court determined that assessing 1) whether the individual created a situation which led to the use of force and 2) the act was committed recklessly or intentionally is an unwarranted and illogical expansion of *Graham*.[11] The Court further held "The rule's fundamental flaw is that it uses another constitutional violation to manufacture an excessive force claim where one would not otherwise exist.[12] This is precisely what Plaintiff in this case is attempting to do as well, which is impermissible and such a claim should be summarily dismissed against Defendant.

Should this Court however choose to consider whether Defendant's conduct recklessly created the need to use deadly force, then in addition to *Medina,* the Tenth Circuit's recent ruling in *Arnold*[13] must be applied. The officer's conduct must be "immediately connected" to the use of force.[14] Plaintiff merely cites *Sevier* to support its statement. However, Tenth Circuit precedence has explained that reckless conduct "might be sustained if the claimant could prove police ran—weapons drawn and screaming—up to an armed, suicidal suspect.[15] Otherwise, to say that the officer's plan would create a need to shoot a suspect is to indulge in the very sort of hindsight revision the law forbids.[16] The Tenth Circuit has held:

> The time-frame is a crucial aspect of excessive force cases. Other than random attacks, all such cases begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause and which, if kept within constitutional limits, society praises the officer for causing."[17]

---

[10] *City and County of Los Angeles, California, v. Mendez*, 137 S.Ct. 1539 (2019).
[11] *Id.*
[12] *Id*.
[13] *Arnold v. City of Olathe, Kansas,* 35 F.4th 778 (10th Cir. 2022)
[14] *Id.*
[15] *Clark v. Colbert,* 895 F.3d 1258 (10th Cir. 2018).
[16] *Id. citing See Graham*, 490 U.S. at 396, 109 S.Ct. 1865;
[17] *Plakas v. Drinski,* 19 F.3d 1143, 1150 (7th Cir. 1994)

8

It is important that the *Arnold* Court explained "time is not the only factor, and attenuated conduct or mere negligence is not considered."[18] Here, Plaintiff created the need for Defendant to use deadly force. Defendant calmy held Mr. Crutcher at gun point and was giving him commands that he refused to obey, Defendant's intentions were to contain Mr. Crutcher, and these facts strikingly resemble those in *Medina,* where this Court held that the officer's conduct was not reckless and therefore did not create the need to use deadly force. The application of *Medina* and *Arnold* to this case and the fact that no reasonable jury could find Defendant's conduct to be a reckless provocation, the third *Larsen* factor weighs in favor of Defendant.

Plaintiff fails to carry his burden to prove that the fourth *Larsen* factor weighs in Plaintiff's favor. First, the evidence, even viewed in the light most favorable to Plaintiff clearly demonstrates Mr. Crutcher had continually reached toward his pockets, continually refused to obey Defendant's commands, and reached into the window of the SUV. Based on the law of *Estate of Taylor,* these facts establish that Mr. Crutcher had "bad intentions."[19] Plaintiff has failed to overcome its burden to prove that the *Larsen* factors weigh in favor of him.

### i. Additional factors.

Plaintiff either failed to address or minimally addressed the additional factors that Defendant asserted to demonstrate reasonableness in regard to Defendant's use of force. For instance, the difference in size between Mr. Crutcher and the Defendant which affected how Defendant dealt with Mr. Crutcher. Defendant and Officer Turnbough believed Mr. Crutcher was targeting them. The incident took place early on a Friday evening. Plaintiff alleged in his Complaint that Mr. Crutcher had his hands in the air at the time he was shot – however does not

---

[18] Arnold citing *Ceballos*, 919 F.3d at 1214*; see also Estate of Ronquillo v. City & Cty. of Denver*, 720 F. Appx 434, 438 (10th Cir. 2017) (finding that officers' early attempt to remove a suspect from his car did not create the need for deadly force because the suspect had time to drive away from officers but instead chose to drive toward them).
[19] *Estate of Taylor v. Salt Lake City*, 16 F.4th 744 (10th Cir. 2021).

9

make that claim in his Response – most likely because his claim is refuted by the video evidence. These additional factors, combined with *Larsen's* four factors would have caused a reasonable officer in Officer Shelby's position to believe Mr. Crutcher posed an imminent threat of danger.

As to *Graham's* third factor, Plaintiff fails to satisfy its burden that this factor weighs in his favor by merely stating that Mr. Crutcher was not actively resisting Defendant nor trying to evade arrest by flight. Further Plaintiff completely failed to overcome authority cited by Defendant where this Court held "a suspect's refusal to cooperate as an important factor in finding the officer's use of force against suspect reasonable." [20]

**B.     Plaintiff Has Failed to Establish A Genuine Material Fact Which Would Deny Defendant Qualified Immunity.**

**1.  Position of the Window**

Defendant has presented credible evidence that the window of the SUV was partially rolled down. Plaintiff provides one photo in an effort to discredit Defendant's mound of evidence. The photo provided by Plaintiff is an aerial photo taken distantly from a helicopter and is very hard to discern. Conversely, Defendant has provided clear photos taken immediately after the shooting which clearly demonstrate the position of the window as partially rolled down. Further, Defendant testified the window was partially down and she had the opportunity to stand next to the window prior to the shooting. Additionally, Officer Turnbough who was on the scene with Defendant also testified the window was partially rolled down. Most importantly, Detective Sergeant Dave Walker, who investigated immediately after the shooting testified the window was partially down. This evidence is compelling and cannot be contradicted by one hard to discern distant aerial photo. Plaintiff further argues no blood was found inside the vehicle which is evidence the window was rolled up which is immaterial.  Plaintiff proffered no evidence suggesting a gunshot wound

---

[20] Fisher v. City of Las Cruces, 584 F.3d 888 (10th Cir. 2009), citing Estate of Larsen at 1260-61.

travelling through a shirt and striking someone on the chest would spray blood anywhere. Based on the credible evidence the window was partially rolled down which would have given Mr. Cruther the opportunity to reach into the vehicle and retrieve a gun and therefore based on the totality of the circumstances, it is reasonable for Defendant to have believed she was in imminent danger for her life when Mr. Crutcher reached into the partially opened window.

### 2. Defendant's Belief that Mr. Crutcher Had a Gun and He Could Retrieve It.

Plaintiff's claim that Defendant's belief that Mr. Crutcher had a gun and he could retrieve it was unreasonable is improper. Defendant has presented credible evidence she believed Mr. Crutcher had continually reached for a gun in his pockets and at the time he reached into the window of the SUV she reasonably believed he was going to retrieve a gun and shoot her. This inquiry must be undertaken from "**the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.**" *Graham v. Connor,*[21] *Olsen v. Layton Hills Mall;*[22] and *Medina v. Cram.*[23] It is immaterial what Plaintiff believes about the existence of a gun or the ability to retrieve it, but what Defendant reasonably believed at the time of the incident. First Plaintiff has provided no case law, and none exists, requiring an officer to see a gun. In fact, the totality of the circumstances dictates the reasonableness here. The Tenth Circuit held in *Estate of Taylor*[24] that the Defendant Officers' belief that the suspect had a gun was reasonable.

### 3. Whether Defendant Knew Officer Turnbough was There to Back Her.

It is immaterial whether Defendant knew Officer Turnbough was there to back her. Officer Turnbough's decision to take out his taser, a "less lethal" weapon, does not establish that Defendant's force was excessive. Police officers are not required to use alternative, less intrusive

---

[21] *Graham v. Connor,* 490 U.S. 396, 397, (1989).
[22] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002).
[23] *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).
[24] *Estate of Taylor v. Salt Lake City*, 16 F.4th 744 (10th Cir. 2021).

means if their conduct is objectively reasonable under the circumstances.[25] The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within the range of conduct which is objectively reasonable under the Fourth Amendment.[26] Therefore, where an officer's use of deadly force is justified under the Constitution, there is no constitutional duty to use non-deadly force.[27] Defendant's conduct was objectively reasonable under the totality of the circumstances and therefore Plaintiff's argument fails.

C.   **The Law Was Not Clearly Established At the Time Of The Incident With Regard To Plaintiff's Excessive Force Claim.**

Plaintiff has not provided clearly established law that would have put Defendant on notice that her conduct violated Mr. Crutcher's constitutional rights.[28] In fact there was no Supreme Court or Tenth Circuit case that would have put Defendant on such notice. Plaintiff primarily relies on *Estate of Ceballos*[29] by claiming (1) the facts of this case are strikingly similar to those of *Ceballos,* (2) *Ceballos* occurred prior to the incident in this case (although decided after), and (3) the Tenth Circuit in *Ceballos* ruled that *Allen*[30] put defendant officers in *Ceballos* on notice that their conduct was unconstitutional, therefore, *Allen v. Muskogee* through *Ceballos* has put Defendant on notice that her conduct was unconstitutional. There are two reasons Plaintiff's argument fails. The first reason is obvious – *Ceballos* was decided after the incident here – therefore Defendant could not have been put on notice that her conduct was unconstitutional. It is irrelevant that the conduct in

---

[25] *Medina v. Cram,* 252 F.3d 1124, 1131 (10th Cir. 2001).
[26] *James v. Chavez*, 830 F.Supp.2d1208 (D.N.M. 2011).
[27] *Plakas v. Drinksi,* 19 F.3d 1143, 1148 (7th Cir. 1994); *Rucinski v. County of Oakland*, 2015 WL 3874482, *7 (E.D.Mich.2015), *aff'd*, 655 Fed.Appx. 338 (6th Cir.2016). *See Wilcoxson v. Painter*, 2016 WL 866327, *8 (E.D.N.C.2016)("Under the correct standard, defendant Painter's decision to use her gun instead of her Taser was well within the realm of an objectively reasonable response to a perceived threat of immediate harm").
[28] *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
[29] *Estate of Ceballos v. Husk,* 919 F.3d 1204 (10th Cir. 2019)
[30] 119 F.3d 837 (10th Cir. 1997)

question in *Ceballos* occurred prior to the instant case, the Supreme Court has made it clear that what is relevant is the date the case was published.[31] Also in *Bond v. Tahlequah* the Court ruled that *Ceballos* could not have put officers on notice that they violated clearly established law since *Ceballos* was "decided after the shooting at issue. . . ."[32]

The second reason is extremely important to the clearly established inquiry. Plaintiff claims that since *Allen v. Muskogee*[33] put defendant officers in *Ceballos* on notice that their conduct was unconstitutional then likewise *Allen* put Defendant here on notice that her conduct was unconstitutional. Plaintiff's argument fails. In *Bond v. City of Tahlequah*[34] the Tenth Circuit reversed the district court by allowing *Allen* to put the officers on notice that their conduct was unconstitutional, like it did in *Ceballos*. However, the Supreme Court reversed the Tenth Circuit holding that the court contravened the settled principles that "courts [are] not to define clearly established law at too high a level of generality."[35] Further, the *Bond* Supreme Court held that none of the decisions relied upon by the Tenth Circuit came close to providing clearly established law,[36] in particular its reliance on *Allen*. In *Allen* the officers responded to a potential suicide call by sprinting toward a parked car, screaming at the suspect who was holding a gun, and attempting

---

[31] *Plumhoff v. Rickard*, 134 S.Ct. 212 (2014) (The Court should not consider later decided cases because they "could not have given fair notice to the officer.").
[32] *City of Tahlequah v. Bond,* 595 U.S. 5 (2021) citing *Brosseau v. Haugen,* 543 U.S. 194 (2004), wherein cases relied on to give notice were decided after the incident in Brosseau held that *Ceballos* was "decided after the shooting at issue, [and therefore] is of no use in the clearly established inquiry."
[33] 119 F.3d 837 (10th Cir. 1997)
[34] *Bond v. City of Tahlequah, Oklahoma,* 981 F.3d 808 (10th Cir. 2020) (reversed by 595 U.S. 9 (2021)).
[35] *City of Tahlequah, Oklahoma v. Bond,* 595 U.S. 5 (2021) citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 583 U. S., at ——, 138 S.Ct., at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Such specificity is "especially important in the Fourth Amendment context," where it is "sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (*per curiam*) (internal quotation marks omitted).
[36] *Id.*

13

to physically wrest the gun from his hands[37] in contrast to the *Bond* officers who engaged in a conversation with the suspect, followed him into a garage at a distance of 6 to 10 feet, and did not yell until after the suspect picked up a hammer. Here, like in *Bond*, *Allen* cannot clearly establish that Defendant's conduct was unconstitutional – Defendant tried to engage in conversation with Mr. Crutcher, she calmly followed him as he disobeyed her orders and walked to the SUV, and she did not yell at him. Moreover, in distinguishing *Allen*, unlike the Defendant in this case, the *Allen* defendants did not raise a qualified immunity defense, which had it been raised would have required a greater showing of officer recklessness by the plaintiff.[38] Even if the Court were to consider *Ceballos* in its analysis, the facts are equally distinguishable as those here.[39]

Plaintiff's citing of *King v. Hill*,[40] is improper. Not only is *King* an unpublished decision that could not put Defendant on notice that her conduct was unconstitutional,[41] but it is in direct contravention of the requirements set forth by the Supreme Court in *Bond*. Likewise cases cited in *King: Garner*,[42] *Walker*,[43] *Zuchel*[44] and *Zia*[45] cannot have put Defendant on notice that her conduct was unconstitutional.

WHEREFORE, premises considered, Defendant respectfully requests the Court grant her Motion for Summary Judgment.

---

[37] Bond citing 119 F.3d, at 841.
[38] *Id*.
[39] *Ceballos* involved a report that the suspect was acting crazy, had two baseball bats and was under the influence or drunk.[39] The defendant officers approached the suspect quickly and shouted at him to drop the bat and within a minute of arriving officers shot the suspect. It is important to note that eyewitness testimony conflicted with defendants' account of the events.
[40] 615 Fed. App'x 470, 2015 U.S. App. LEXIS 10660 **24-25 (10th Cir. 2015) (unpublished)
[41] *Harris v. Mahr,* 838 Fed.Appx. 339 (10th Cir. 2020) (where party relies on unpublished cases the cases fail to show that the law was clearly established at the time of the incident).
[42] 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)
[43] 451 F.3d 1139 (10th Cir. 2006)
[44] 890 F.2d 273 (10th Cir.1989)
[45] 597 F.3d 1150 (10th Cir.2010)

Respectfully submitted,

/s/ Scott B. Wood
Scott B. Wood
WOOD, PUHL & WOOD, PLLC
4037 E. 49th St. S.
Tulsa, Oklahoma 74135
(918) 742-0808/ (918) 607-5946
*Attorney for Defendant Betty Jo Shelby*

## CERTIFICATE OF SERVICE

This is to certify that on October 20, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

M. David Riggs
Damario Solomon-Simmons
Melvin C. Hall
Ben Crump
Robert Lafferandre
Randall Wood
Jessica Dark
Jeffrey Hendrickson
Shannon McMurray

/s/ Scott B. Wood