# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHAEL MANNING,
as the Administrator of the
ESTATE of TERENCE CRUTCHER, SR.,

*Plaintiff,*

vs.

Case No. 17-CV-336-EFM-SH

CITY OF TULSA, et al.,

*Defendants.*

## MEMORANDUM AND ORDER

Before the Court are Defendants Betty Jo Shelby's ("Officer Shelby") and City of Tulsa's (the "City") Motions for Summary Judgment. (Docs. 193 and 196). Plaintiff Michael Manning, as the Administrator of the Estate of Terrence Crutcher, Sr., asserts an excessive force claim under the Fourth Amendment and a deprivation of life claim under the Fourteenth Amendment against Officer Shelby. Plaintiff also brings a wrongful death claim against the City under a theory of vicarious liability. Officer Shelby asks the Court to grant her summary judgment, arguing that the Fourth Amendment claim is barred by qualified immunity and the Fourteenth Amendment claim is meritless. The City asks the Court to grant it summary judgment, arguing that Officer Shelby acted reasonably and met the Oklahoma law standard of conduct. For the reasons stated below, the Court grants both motions for summary judgment.

## I.        Factual and Procedural Background

This case arises from the fatal shooting of Terence Crutcher by Officer Shelby. On September 16, 2016, Officer Shelby, an officer of the Tulsa Police Department, responded to a domestic disturbance call. At the intersection of 36th Street North and Lewis Avenue, Officer Shelby observed a black male who she believed was under the influence of PCP or having a mental episode. Officer Shelby decided to continue west on 36th Street North to respond to the priority domestic disturbance call.

After traveling west on 36th Street North for several hundred feet, Officer Shelby stopped to investigate an unattended, running vehicle parked in the middle of the road. Officer Shelby radioed dispatch to request that someone else respond to the domestic disturbance call, explain that she would be investigating the vehicle, and call in the tag number. She turned on only her rear flashing lights, which did not activate her dash cam, and exited her patrol car. Officer Shelby walked to the unattended vehicle and looked through the windows on the driver's side. She first looked through at the rear compartment, then at the back seat, and finally at the front seat. Officer Shelby did not see anyone in the vehicle and started walking toward the back of the vehicle to go around and check the passenger's side.

As she approached the back of the vehicle, Officer Shelby saw the same man she had seen walking at the intersection earlier walking west on the north edge of 36th Street North. This man was Crutcher. Officer Shelby yelled to him, asking if the parked vehicle was his, but Crutcher did not respond to her. Instead, Crutcher started walking toward Officer Shelby who ordered him to take his hands out of his pockets. Officer Shelby could not understand what Crutcher mumbled in response. Then Crutcher slowly pulled his hands out of his pockets and put both hands up in the air. He was profusely sweating, and his head was positioned downward. The parties dispute

-2-

whether Crutcher followed Officer Shelby's orders by keeping his hands in the air or if he periodically lowered them to his pockets.

Crutcher had walked to the rear end of Officer Shelby's patrol car. Officer Shelby radioed "Adam 303. Hold traffic. I have a suspect that won't show me his hands!" Officer Tyler Turnbough heard Officer Shelby's radio traffic and immediately headed toward her location. After radioing, Officer Shelby ordered Crutcher to stop moving, get on his knees, and to show his hands. It is disputed whether Crutcher complied with any commands. Crutcher walked to the front of the passenger side of the patrol car, stopped, mumbled something, and then looked over at the vehicle parked in the middle of the road. Officer Shelby could hear police sirens in the distance.

Then Crutcher started walking toward the driver's side of the parked vehicle with his hands in the air. Officer Shelby followed him with her handgun drawn and ordered Crutcher to stop and get on his knees. It took Crutcher approximately 27 steps over the course of about 18 seconds to reach the driver's side door of the vehicle parked in the middle of the road. Shortly before Crutcher reached the driver's side door of the vehicle, Officer Turnbough arrived at the scene.

Crutcher had his hands up and was stopped facing toward the driver's side door of the vehicle. Officer Shelby was near the rear of the vehicle with her handgun drawn. Officer Turnbough was slightly behind Officer Shelby's left shoulder with his Taser drawn. The parties dispute whether the driver's side window was fully rolled down, partially rolled down, or not rolled down at all. Additionally, the parties dispute whether Crutcher reached into the driver's side window to possibly retrieve a weapon. However, Crutcher did at least lower his arm. When Officer Shelby and Officer Turnbough saw Crutcher lower his arm, they simultaneously fired the handgun and Taser at him. Crutcher fell to the pavement. Less than an hour later, Crutcher was pronounced dead.

Austin Bond, the administrator of Crutcher's Estate at the time, commenced this action in June 2017, asserting various claims against several Defendants. After years of litigation and a few partially successful motions to dismiss, only two Defendants remain—Officer Shelby and the City. Plaintiff brings a Fourth Amendment and Fourteenth Amendment claim against Officer Shelby, and a vicarious liability wrongful death claim under Oklahoma law remains against the City. Both Defendants filed Motions for Summary Judgment on September 1, 2023. Plaintiff filed his Responses on September 29, 2023. The City filed its Reply on October 13, 2023, and Officer Shelby filed her Reply on October 20, 2023.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[1] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[2] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[3] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[4] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—

---

[1] Fed. R. Civ. P. 56(a).

[2] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[3] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[4] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

conclusory allegations alone cannot survive a motion for summary judgment.[5] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[6]

### III.    Analysis

**A.    Officer Shelby's Motion for Summary Judgment**

*1.    Fourth Amendment Right to be Free from Excessive Force*

Officer Shelby argues that she is entitled to summary judgment because Plaintiff cannot overcome her assertion of qualified immunity. It is well established that "individual defendants named in a § 1983 action may raise a defense of qualified immunity."[7] "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[8] When the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[9] The Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[10] "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[11] "In determining whether the plaintiff has shouldered

---

[5] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[7] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[8] *Id*. (quotations and citation omitted).

[9] *Id*. (citation omitted).

[10] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[11] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

this *heavy burden*, '[the Court] construe[s] the facts in the light most favorable to the plaintiff as the nonmovant.' "[12]

    a.  Clearly established

A right is "clearly established" if Supreme Court or Tenth Circuit precedent (or the weight of authority from other circuits) would put reasonable officers in the defendants' position on notice they were violating the constitution or statute.[13] "The plaintiff bears the burden of citing to [the Court] what he thinks constitutes clearly established law."[14] The law must be "sufficiently clear that every reasonable official would have understood that what [she] is doing violates that right."[15] This does not require the existence of a case exactly on point,[16] but does require that the existing caselaw be sufficiently clear to place the constitutional issue "beyond debate."[17] "Because the focus is on whether the officer had fair notice that [her] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[18] Thus, the law then-existing

---

[12] *Corona v. Aguilar*, 959 F.3d 1278, 1282 (10th Cir. 2020) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)) (emphasis added).

[13] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017); *see also Ullery v. Bradley*, 949 F.3d 1282, 1294–97 (10th Cir. 2020) (finding a right was clearly established based on the consensus of persuasive authority from six other circuits).

[14] *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010); *Easter v. Cramer*, 785 F. App'x 602, 607 (10th Cir. 2019) ("The plaintiff bears the burden of directing the Court to authority that clearly establishes the right that was arguably violated."); *see Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (finding plaintiffs failed to carry their heavy burden when they did not cite or discuss any pertinent caselaw).

[15] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (further citation and quotations omitted).

[16] *See Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002); *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1167 (10th Cir. 2022) *cert denied sub nom. Anderson v. Calder*, 143 S. Ct. 2658 (2023) ("[T]his inquiry does not require a scavenger hunt for prior cases with precisely the same facts.") (quotations and citation omitted); *Est. of Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (" '[A] prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law.' ") (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1347 (2019)).

[17] *White v. Pauly*, 580 U.S. 73, 79 (2017).

[18] *McInerney v. King*, 791 F.3d 1224, 1237 (10th Cir. 2015) (quoting *Mascorro v. Billings*, 656 F.3d 1198, 1207–08 (10th Cir. 2011)).

at the time of the officer's actions must clearly establish that such conduct would violate the Constitution.[19]

"[E]xcessive force jurisprudence requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case, and there will almost never be a previously published opinion involving exactly the same circumstances."[20] To accommodate the multitude of factual circumstances involving claims of excessive force, the Tenth Circuit has established "a sliding scale in which '[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."[21] However, the precedent at the time of the officer's conduct must do more than merely suggest a rule.[22] The precedent must sufficiently define the rule's contours so "that it is clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted."[23] This required specificity is " 'especially important in the Fourth Amendment context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.' "[24]

---

[19] *Id*.

[20] *Easter*, 785 F. App'x at, 607 (quotation omitted).

[21] *Id*. (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (further quotations omitted).

[22] *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 11 (2021).

[23] *Id*. (quotation omitted).

[24] *Id*. at 12–13 (quoting *Mullenix*, 577 U.S. at 12).

Plaintiff cites to *King v. Hill*,[25] *Estate of Ceballos v. Husk*,[26] and *Allen v. Muskogee*.[27] The Tenth Circuit in *Hill* determined that an officer shooting an unarmed suspect who was not posing a threat to the officer or others is a clearly established violation of the Fourth Amendment.[28] In *Hill*, an officer shot and wounded the plaintiff who was mentally ill, holding a jacket, and raising his hands.[29]

In *Ceballos*, the Tenth Circuit determined that a reasonable officer would have known that the reckless action of running screaming to a suspect caused the need to use deadly force, and thus is a clearly established violation of the Fourth Amendment.[30] There, an officer shot and killed a distraught suspect after approaching the suspect quickly, shouting at the suspect to drop the bat, and refusing to "give ground" when the suspect approached officers.[31] The Tenth Circuit noted that a case decided on jurisdiction grounds[32] and a unpublished decision[33] by themselves are not enough to meet the standard of clearly established.[34] However, the Tenth Circuit found that the clearly established standard is met when those cases are considered in conjunction with *Allen*, a closely analogous published case, that analyzes an officer's actions in the context of excessive force.[35]

---

[25] 615 F. App'x 470 (10th Cir. 2015).

[26] 919 F.3d 1204 (10th Cir. 2019).

[27] 119 F.3d 837 (10th Cir. 1997).

[28] *Hill*, 615 F. App'x at 477, 479.

[29] *Id*. at 471–72.

[30] *Ceballos*, 919 F.3d at 1216–17.

[31] *Id*. at 1216.

[32] *Id*. at 1217 (discussing *Sevier v. City of Lawrence*, 60 F.3d 695 (10th Cir. 1995)).

[33] *Id*. (discussing *Hasting v. Barnes*, 252 F. App'x 197 (10th Cir. 2007)).

[34] *Id*.

[35] *Id*. at 1215–17 (discussing *Allen*).

Moving to *Allen*, the Tenth Circuit there held that a jury could find that the Fourth Amendment was violated when an officer's reckless conduct "precipitated the need to use deadly force."[36] In *Allen*, officers, within ninety seconds, shot and killed a potentially suicidal suspect after running to the parked vehicle where the suspect was located, yelling at the suspect, and attempting to physically take the suspect's gun.[37] All of these events took place within ninety seconds.[38]

Here, it is Plaintiff's burden to demonstrate that it was clearly established that an officer cannot use deadly force on a suspect who: has diminished capacity; was in an open, unconfined area; reportedly committed only non-violent misdemeanors; ignored orders to stop and get on his knees as he slowly walked away from an officer towards a parked vehicle with his hands up; and when he reached the door of the vehicle lowered his arm.[39] Officer Shelby argues that Plaintiff fails to meet his burden because the cases that he cites too are either unpublished, published after the incident at issue in this case, or factually distinguishable.

Plaintiff cites to *Hill*, *Ceballos*, and *Allen* to meet his burden. However, none of these cases sufficiently aid Plaintiff in meeting his burden.

For instance, Plaintiff draws no comparisons between the facts of *Hill* and the facts of this case. Instead, he merely cites the general rule from *Hill* that shooting an unarmed suspect who poses no threat to officers violates the Fourth Amendment. However, this rule is far too broad to be sufficiently defined to facts at issue in this case. A broad rule may serve as a founding principle

---

[36] *Allen*, 119 F.3d at 841.

[37] *Id*. at 839.

[38] *Id*.

[39] Whether Crutcher reached into the vehicle window is disputed in this case. Construing facts in a light most favorable to Plaintiff, Crutcher lowered his arm.

for other cases to build upon to show that a right is clearly established; however, the broad rule by itself is not enough for the clearly established burden to be met.[40]

Additionally, *Hill* is an unpublished case. An unpublished case, by itself, is wholly inadequate to meet the clearly established burden.[41] Even though Plaintiff vaguely alludes to published authority in a parenthetical citation following his citation to *Hill*, this too is insufficient. Importantly, the parenthetical citation fails to specify whether the clearly established right applied only to the plaintiff in *Hill*, or whether the clearly established right applies to Plaintiff in this case.[42] Regardless, a vague parenthetical citation falls short of the heavy burden that Plaintiff bears to show that the right is clearly established. Plaintiff has the burden to provide the Court with citations to authority and/or legal argument to show that the right at issue is clearly established. While Plaintiff did provide the Court with a citation to *Hill*, Plaintiff did not provide the Court with citations to or legal arguments regarding the published authority within *Hill*. Therefore, by only citing to an unpublished case, Plaintiff cannot meet his high burden.

*Ceballos* is the case that Plaintiff most heavily relies upon to meet his burden. However, this reliance is misplaced. To determine whether a right is clearly established, the Court looks to the legal precedent at the time that the conduct occurred.[43] *Ceballos* was published in 2019, two

---

[40] *Hill*, 615 F. App'x at 477 (finding a published case that was factually distinguishable could not meet the clearly established standard by itself, but it could supply "a foundational principle concerning the limits on the use of deadly force against unarmed suspects").

[41] *Ceballos*, 919 F.3d at 1216–17 (discussing *Hasting*, 252 F. App'x 197); *see Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012) ("[A]n unpublished opinion provides little support for the notion that the law is clearly established on a given point. But we have never held that a district court must ignore unpublished opinions in deciding whether the law is clearly established."); *Harris v. Mahr*, 838 F. App'x 339, 343 (10th Cir. 2020) (citing *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007)).

[42] This uncertainty stems from Plaintiff utilizing "Plaintiff" to refer to both himself, and to plaintiffs in general when articulating legal standards.

[43] *McInerney*, 791 F.3d at 1237.

-10-

and a half years after the incident at issue occurred. A case "decided after the shooting at issue, is of no use in the clearly established inquiry."[44] As such, *Ceballos* could not give fair notice to Officer Shelby that her conduct was unconstitutional.

Nonetheless, Plaintiff asserts that the untimeliness of *Ceballos* is inconsequential because the Tenth Circuit ruled that *Allen* clearly established the rights at issue in *Ceballos*, and therefore, *Allen* clearly establishes the right at issue in the present case. But Plaintiff provides no analysis of how the facts in *Allen* resemble the situation at issue before this Court. A review of the case reveals that the facts of *Allen* differ from the facts of the situation at issue here.

In *Allen*, the officers carelessly escalated the situation by screaming at the suspect in the vehicle and attempting to physically take the suspect's gun.[45] By contrast, Officer Shelby interacted with Crutcher while investigating a parked vehicle in the middle of the road; did not see a weapon in Crutcher's hands; and followed Crutcher to the stopped vehicle while ordering him to show his hands, stop walking toward the vehicle, and to get on his knees. Thus, *Allen* does not clearly establish that Officer Shelby's conduct in the case at issue was reckless or that her ultimate use of force was unlawful.

The issue here is whether Plaintiff met his burden to show that the law is clearly established. Of the three cases Plaintiff provides, the Court cannot consider *Ceballos* because it was published after the incident occurred, cannot rely on *Allen* because it is too factually different, and cannot rely on *Hill* by itself because it is unpublished. As a result, Plaintiff fails to meet his heavy burden to show the right at issue is clearly established. "This isn't to say Plaintiff lacked (or

---

[44] *Bond*, 595 U.S. at 13 (citation omitted).

[45] *Allen*, 119 F.3d at 841.

possessed) a meritorious case, but clients are usually bound by their lawyers' actions."[46] And "Plaintiff, through his counsel, has simply failed to carry the burden assigned to him by law."[47] Therefore, the Court grants Officer Shelby's motion for summary judgment, finding that qualified immunity bars Plaintiff's Fourth Amendment claim against her.

2. *Fourteenth Amendment Right to be Free from Deprivation of Life Without Due Process*

Officer Shelby argues she is entitled to summary judgment because Plaintiff's Fourteenth Amendment claim is meritless. In his Response, Plaintiff fails to address Officer Shelby's summary judgment arguments against the Fourteenth Amendment claim. Instead, Plaintiff responded only to Officer Shelby's assertion of qualified immunity against the Fourth Amendment excessive force claim.

On summary judgment the burden of persuasion is shifted to the nonmovant when the movant makes an argument as to "why summary judgment is appropriate as to a particular claim."[48] The nonmovant's "failure to respond" to summary judgment arguments against a particular claim, is "fatal."[49]

Here, in Plaintiff's response, he only addresses Officer Shelby's summary judgment arguments against the Fourth Amendment claim. He provides no argument or support for his remaining Fourteenth Amendment claim against Officer Shelby. Therefore, the Court finds that

---

[46] *Gutierrez*, 841 F.3d at 903 (quoting *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013)) (internal quotation marks and brackets omitted).

[47] *Rojas v. Anderson*, 727 F.3d 1000, 1005–6 (10th Cir. 2013) (quoting *Smith*, 707 F.3d at 1162) (internal quotation marks and brackets omitted) (alterations in original).

[48] *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 769 (10th Cir. 2001).

[49] *Id.*; *see Bejar v. Dep't of Veterans Affs.*, 683 F. App'x 656, 657 n. 2 (10th Cir. 2017) ("[Plaintiff] waived his retaliation claim by . . . omitting it from his summary judgment briefing.").

Plaintiff abandoned his remaining Fourteenth Amendment claim by failing to substantively respond to Officer Shelby's arguments against that claim. Consequently, the Court grants Officer Shelby's motion for summary judgment on Plaintiff's Fourteenth Amendment claim against her.

**B.      The City's Motion for Summary Judgment**

The City argues that it is entitled to summary judgment on the vicarious liability wrongful death claim because Officer Shelby acted reasonably and met the Oklahoma law standard of conduct. However, the wrongful death claim is a state law claim and no federal law claims remain in this case.

"[F]ederal courts are courts of limited subject-matter jurisdiction," and they "may only hear cases when empowered to do so by the Constitution and by act of Congress."[50] "[S]upplemental jurisdiction over state claims is exercised on a discretionary basis and . . . if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."[51] The Tenth Circuit advises the district courts to "generally decline to exercise supplemental jurisdiction when no federal claims remain because '[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.' "[52]

Here, no federal law claims remain. Because Plaintiff's only remaining claim arises under state law, the Court declines to exercise supplemental jurisdiction over Plaintiff's wrongful death

---

[50] *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (further citations and quotations omitted).

[51] *Hubbard v. Okla. Ex. Rel. Dep't Hum. Servs.*, 759 F. App'x 693, 713 (10th Cir. 2018) (quoting *Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)) (internal quotation marks omitted).

[52] *Id*. (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

claim. Consequently, the Court dismisses the vicarious liability wrongful death claim without prejudice. Therefore, the City's Motion is denied as moot.

**IT IS THEREFORE ORDERED** that Defendant Betty Jo Shelby's Motion for Summary Judgment (Doc. 193) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's vicarious liability wrongful death claim against Defendant City of Tulsa is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant City of Tulsa's Motion for Summary Judgment (Doc. 196) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 8th day of April, 2024.

This case is closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-14-